**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Alpha Supply, Inc., a Washington corporation,<br><br>　　　　Plaintiff,<br><br>vs.<br><br><br>Hartley Enterprises, Inc.,<br><br>　　　　Defendant, | No. CIV 00-81-TUC-EHC<br><br>**FINDINGS OF FACT;**<br>**CONCLUSIONS OF LAW; and**<br>**ORDER FOR ENTRY OF**<br>**JUDGMENT** |

　　This case was filed February 1, 2000 by Alpha Supply, Inc., (Alpha Supply), a Washington corporation, against California Tent, Inc., (California Tent) a California corporation and Hartley Enterprises, Inc., (Hartley Enterprises) an Arizona corporation seeking damages arising out of events in February 1998, at a gem and mineral show in Tucson, Arizona.

　　On March 15, 2004, U.S. District Judge Alfredo C. Marquez granted Alpha Supply's Motion for Partial Summary Judgment against Hartley Enterprises ruling that it is vicariously liable to Alpha Supply for California Tent's fault. It was further ordered that Hartley Enterprises was entitled to a credit of $115,000 that Alpha Supply received in a settlement with California Tent. The Motion was denied in all other respects. (Dkts. 84 and 85).

Alpha Supply and Hartley Enterprises agreed that the case would be transferred to this Court and that damages issues would be tried to the Court, without a jury. (Dkt. 117).

A two day bench trial was held in Tucson December 1 and 2, 2004. Plaintiff called three witnesses. Defendant presented two witnesses. The issue to be resolved is damages.

The parties filed Proposed Findings of Fact and Conclusions of Law. (Dkt. Nos. 143 and 144).

The Court, having considered the evidence, exhibits, prior court orders, and arguments of counsel, enters the following Findings of Fact, Conclusions of Law, and Order for Judgment.[1]

## FINDINGS OF FACT

1. A community wide gem and mineral show has been held in Tucson, Arizona in early February for many years. The show lasts approximately three weeks. Exhibitors/dealers/vendors (collectively dealers) rent locations in buildings or in tent facilities which are located throughout the metropolitan area. It is a big deal.

2. It is estimated that as many as 50,000 persons or more visit the exhibit sites for each show.

3. Sometime in the mid 90's, Christopher Hartley, (Chris Hartley) incorporated as Alpha Supply, Inc., and took over an exhibit area which was previously maintained by U.S. Gem Expos. Chris Hartley had worked for U.S. Gem Expos for several years and was familiar how it leased the exhibit area from the City of Tucson, cleared the area, and set up tents to house

---

[1] At the time of trial, five Motions were pending. The Court reserved rulings on the motions, pending trial. Those Motions will be addressed in a separate Order. (See Dkt. 136).

the dealers.

4. Alpha Supply engages in the business of selling lapidary equipment. (jewelry supplies).

5. Alpha Supply had an exhibition area, which it called "Congress Street Expo," leased from the City of Tucson for gem and mineral shows beginning in 1995 and continuing through 2001. (Expo "98").

6. Hartley Enterprises' Dealer Contract Application for space in Congress Street Expo "98", was signed by both parties February 10, 1997. The Application provided:

THE INDIVIDUAL SIGNING ON BEHALF OF THE DEALER HAS READ BOTH SIDES OF THIS CONTRACT APPLICATION AND HEREBY AGREES TO ALL OF THE TERMS AND CONDITIONS HEREIN.

Provision M on the reverse side of the form, provided

Dealer is responsible for any and all insurance's [sic] against risks implicit or explicit in Dealer's participation in the Show. Dealer agrees to hold Management and Show Facility harmless from any claims arising from Dealer's participation in the Show including, but not limited to, claims arising from the use of vehicles or equipment, and move-in and move-out operations, and from any claim arising from any act or omission of Dealer, its owners, employees, agents, servants or guests, and from any claims arising from loss, robbery, burglary, pilferage, vandalism, fire, water damage, accident, negligence or other cause, regardless of whose act or omission generates such claim or claims. The license herein granted is revocable by Management at anytime in the event Dealer shall violate this agreement.

The Application and Contract forms were preprinted "NCR" forms, which were purchased by Hartley Enterprises. The provisions noted above were in the "NCR" forms used by Hartley Enterprises throughout the years it conducted business as "Congress Street Expo."

7. Provision M of the NCR form was not discussed by Alpha Supply and Hartley Enterprises' representatives at any time.

8. Tom Orme, the person signing on behalf of Alpha Supply, testified he never read the

- 3 -

reverse side of either the Application or Dealer Contract or discussed it with Hartley.

9. Chris Hartley, who signed the forms on behalf of Hartley Enterprises testified that he never discussed the provisions of the forms with Alpha Supply representatives. He never considered the provisions of Provision M as applicable to Hartley Supply's claims.

10. Alpha Supply was a dealer at the Congress Street Expo "98." Its exhibits and related supplies were in place the opening day of the show on February 3, 1998, at the space agreed upon, in a tent identified as Pavilion Annex. Tom Orme was present on behalf of Alpha Supply. Alpha Supply was the second largest exhibitor at Expo "98."

11. Hartley Enterprises contracted with California Tent to install and maintain the tents housing the dealers' property.

12. Prior to the February 3, 1998 opening date, Chris Hartley became aware that a large tent (Pavilion) joined with the Annex tent had "insufficient tie downs" and that California Tent "had not installed some specific stakes that [he] knew needed to be installed." He later talked with the owner of California Tent prior to the show opening about the fact some of the stakes were still missing. After that discussion, he looked again and saw the stakes were still missing. Chris Hartley did not inform Alpha Supply of these problems.

13. There is no evidence that Chris Hartley ever personally checked to see that the missing stakes were installed before the show opened.

14. The Congress Street Expo "98" closed at 7:00 p.m., February 3, 1998 (the regular closing hour). Hartley Enterprises provided night security for the exhibition area. Tom Orme and Alpha Supply personnel left the property shortly after 7:00 p.m.

15. Chris Hartley went to the Expo "98" location after he received a call about 9:30 p.m.

- 4 -

February 3, that the wind was blowing and there were "possible problems in the main tent." He found that both the Pavilion tent and where it interconnects with the Annex "had not been properly staked down."

16. Damage by the windstorm and rain which followed caused the Expo "98" show to close and dealer access was restricted for several days. The Expo "98" show reopened to the public February 7, 1998.

17. A considerable amount of Alpha Supply's equipment and supplies were exposed to the wind and rain and were damaged and/or destroyed due to the wind and rain before it could be placed in a secure facility.

18. Inadequate construction and maintenance of the Pavilion tent caused it to collapse and resulted in the damage to Alpha Supply in the Annex. The damages sustained by Alpha Supply were proximately caused by the failure to safety erect the tents.

19. Alpha Supply, after consulting with counsel in Washington, decided that it could not risk selling merchandise exposed to the rain because of possible damage claims and claims for breach of warranties. The Alpha Supply property was collected and sent back to Washington by a common carrier.

20. Alpha Supply told Chris Hartley that its property was going back to Washington on the advice of counsel.

21. Hartley Enterprises did not specifically examine the Alpha Supply property after the storm or attempt to make any damage assessments.

22. Based on the nature of its business circumstances, Alpha Supply acted reasonably in withdrawing from Congress Street Expo "98"; it mitigated its damages by taking this action.

23. Hartley Enterprises had insurance coverage through Scottsdale Insurance (Representative Sandra Ongly) prior to February 3, 1998 for Expo "98." Chris Hartley told the dealers, including Alpha Supply, to file claims with its insurance company. Sandra Ongly came to the site and advised that an "engineering firm, forensic engineering firm" had been hired "to try to ascertain why this tent failed." She provided claim forms to the dealers.

24. Scottsdale Insurance paid claims "to some dealers as a result of the windstorm on February 3rd." Hartley Enterprises filed a claim and was paid $90,000.

25. Approximately fifty-five claims were filed by dealers and paid, including one for Hartley Enterprises, totaling in excess of $1,000,000. Alpha Supply filed a claim; it was never paid.

26. Alpha Supply filed this action in Federal Court February 1, 2000 naming California Tent and Hartley Enterprises as Defendants, and claiming "$305,105.07 in damages for property damages and related expenses."

27. A Summons and Complaint was served on Hartley Enterprises' statutory agent and its default was entered after it intentionally failed to file an answer.

28. Hartley Enterprises/Chris Hartley did not go to Court to defend the case. He testified:

> ...To be honest with you, at the time, based on some of the conversations I had, I did not know that it was going to affect me in some way;
>
> I thought it was being handled;
>
> He thought it was primarily against California Tent;
>
> It was going to be handled by Scottsdale Insurance;
>
> He thought the summons and complaint had been provided to

- 6 -

> Scottsdale Insurance. (See Exh. 30);
>
> He recalled conversations with Sandra Ongly that claims made are being taken care of ;
>
> He did not have any conversations with Sandra Ongly about the Dealer Application or Contract forms;
>
> His understanding was that Scottsdale and Golden Eagle (the insurer for California Tent) "were somehow working it out and the exhibitors were getting paid."

29.  1998 was the last year that Hartley Enterprises put on a show.  Chris Hartley formed another company and his last gem show in Tucson was in 2001.

Chris Hartley has lived in Tucson "most of the time since" 2001.  He has been a licensed contractor in Tucson after 2001, first as "RH Hartley" and at time of trial was operating under the name of T. Theron Construction.  He is the qualifying person for its license.

30.  On September 28, 2000, California Tent and Alpha Supply entered into a Settlement Agreement wherein California Tent paid Alpha Supply $115,000.  The Settlement Agreement expressly reserves the right of Alpha Supply to pursue its claims against Hartley Enterprises.

31.  Alpha Supply timely provided Hartley Enterprise and its insurance carrier records supporting its claims for damages.

32.  There was no substantial evidence presented to rebut the value of Alpha Supply's inventory and supplies damaged and/or destroyed at the Expo "98."

33. Prejudgment interest at the rate of 10% on the principal amount of $128,590.00 (the gross claim for damaged goods, reduced by salvage and giving full credit for the $115,000 payment received from California Tent, has accrued since April 10, 1998.

- 7 -

## CONCLUSIONS OF LAW

1. Hartley Enterprises did not allege a defense of release in its responsive pleadings.

2. In 1999, Scottsdale Insurance received a copy of the form of dealer application and/or contract used by Hartley Enterprises in 1999 and in prior years.

3. Hartley Enterprise breached its non-delegable duty to Alpha Supply by failing to provide and maintain safe and secure premises.

4. Hartley Enterprises' liability to Alpha Supply was determined by the Order and Judgment filed March 15, 2004.  (Dkts. 84, 85).

5. Hartley Enterprises "acknowledg[ed]" in its Response to Alpha Supply's Motion for Partial Summary Judgment "that it had a non-delegable duty and is vicariously liable for California Tent's fault to Plaintiff Alpha Supply." (Dkt. 74, p. 1).

6. Alpha Supply did not file a Motion to Modify or Amend the Judgment filed March 15, 2004; this Court finds no reason to modify or amend that Judgment.

7. Liability was established against Hartley on March 15, 2004, by the Order granting Alpha Supply's Motion for Partial Summary Judgment (Dkt. No. 84) and the Judgment (Dkt. No. 85).

8. No motion has been made by any party to modify or amend the Judgment establishing liability.  Similarly no motion has been brought to reinstate the order of default and/or the Judgment based thereon.

9. At the Expo "98", Hartley Enterprises was a "possessor of land" and it owed dealers the highest duty to keep and make the premises safe, based on Arizona common law and the contract between the parties.  The duty was non-delegable.

10. As a dealer, Alpha Supply was a business invitee.

11. California Tent was an independent contractor. It negligently erected and maintained the tent structures that housed the dealer participants. The premises provided Alpha Supply were not kept reasonably safe.

12. Hartley Enterprises breached its duty to maintain reasonably and safely the premises provided Alpha Supply and is liable to Alpha Supply for California Tent's negligence because of its non-delegable duty to maintain the premises safely.

13. Alpha Supply sustained its burden of proof that Hartley Enterprises is liable to it for damages proximately caused by the failure of the tents at Expo "98", including damages caused by wind, damages caused by water before and/or after the tents were removed, and other damages sustained.

14. Hartley Enterprises waived and/or is estopped from asserting the defense of contractual release by its course of conduct of not asserting this defense while claims were being resolved on its behalf. Further, this claim does not fall within the scope of the release under Arizona law.

15. The course of conduct of Hartley Enterprises and Alpha Supply was inconsistent with Provision M being intended to cover the collapse of the tents at Expo "98."

16. The release contained in Provision M of the Dealer Contract for the 1998 Gem Show was a form provision contained on the reverse side of a contract. The provision was not negotiated by Defendant with any of the dealers who signed the contract. Dealers had no choice but to accept the provision if they wished to participate in the Expo "98."

17. Under Arizona law, such a release is to be strictly construed against the drafter of the

contract. This release must be strictly construed against Hartley Enterprises.

18. This contract is a standardized form offered to the dealers on a take it or leave it basis and constitutes an adhesion contract under Arizona law. Under Arizona law, the enforceability of an adhesion contract depends upon the reasonable expectations of the adhering party and whether the contract is unconscionable.

19. Under the facts of this case, the reasonable expectations of the parties as evidenced by their behavior is inconsistent with the enforcement of this provision, and under the facts of this case, it would be unconscionable and inequitable to enforce this general release provision.

20. The release contained in the Dealer Contract does not apply to the loss suffered by Alpha Supply at Expo "98", and does not bar Alpha Supply's recovery in this case.

21. Hartley Enterprises owed an independent and non-delegable duty to Alpha Supply in this case. The settlement and release of the independent contractor, California Tent, did not extinguish or release Hartley Enterprises' liability.

22. Alpha Supply is entitled to prejudgment interest at the Arizona statutory rate of 10% on the net portion of its damages for destroyed and damaged goods, and related expenses, from the date of its claim to date of Judgment.

23. Alpha Supply is entitled to a judgment in its favor against Hartley Enterprises in the amount of $128,590, plus $7,412 transportation expenses, together with interest at 10% per annum from April 10, 1998 to date of judgment.

24. This matter arises out of a contract, and Alpha Supply as prevailing party is entitled to its attorneys' fees. See: A.R.S. § 12-341.01(A); 28 U.S.C. § 2412.

1  **IT IS ORDERED** that the Clerk enter judgment in favor of Plaintiff and against

2  Defendant in accordance with this Order.

3  
4  DATED this 27th day of September, 2005.

_____
Earl H. Carroll
United States District Judge